IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MIAMI DOLPHINS, LTD., | ) |
|           Plaintiff, | ) Civil Action No. 10-CV-01144 |
| v. | ) |
| KENDALL NEWSON | ) Chief Magistrate Judge Lisa Pupo Lenihan |
| | ) ECF Nos. 2, 9, 18 |
|           Defendant. | ) |

**MEMORANDUM OPINION**

**I. STATEMENT OF CASE**

Plaintiff, Miami Dolphins, Ltd. (hereafter the "Club" or "Dolphins"), filed – on August 30, 2010 - a "Complaint to Enforce Arbitration" in Federal Court against an employee football player, Kendall Newson (hereafter "Newson"). Newson had been participating in the relevant contract-interpretation arbitration since said arbitration was filed by the NFL Management Council (hereafter the "NFLMC") on October 3, 2008 (ECF No. 1). The Club has asked this Court to order Newson to discontinue a Pennsylvania Bureau of Workers' Compensation claim which has been proceeding since August 15, 2008 (hereafter the "PaWC Claim") See Complaint to Enforce Arbitration (ECF No. 1 at Count 1). It has also asked this Court, in its September 2, 2010 Motion for Preliminary Injunction (ECF No. 2), and again in its overlapping September 9, 2010 Motion to Stay (ECF No. 9), to order presiding Pennsylvania Workers' Compensation Judge Briston to dismiss that State benefit proceeding or to enter a stay. On September 21, this

1

Court granted the Motion to Intervene filed by the NFL Players Association (hereafter the "NFLPA"), and a Motion to Dismiss the Complaint is also pending (ECF No. 18).

The Court, on careful consideration, finds no basis for issuance of an injunction or "stay" of the PaWC Claim in the authorities cited by Plaintiff. It further observes that the Anti-Injunction Act, 28 U.S.C. § 2283, and related principles of comity bar Plaintiff's requested intrusion on the primary jurisdiction of the Pennsylvania Workers' Compensation Court. And it concludes that as Plaintiff has no present claim in this forum to any relief sought through its Complaint, *e.g.* "enforcement" of arbitration or intrusion on the PaWC Claim, the Complaint should be dismissed.

In so holding, the Court notes that the questions of contractual interpretation underlying the parties' dispute – including, *e.g.*, the existence of any contractual waiver of entitlement to Pennsylvania (or other non-Florida) workers' compensation benefits and/or a Pennsylvania Bureau of Workers' Compensation forum[1] – are expressly within the consolidated claims before Arbitrator Das. It further observes that the Pennsylvania Workers' Compensation Court has concluded, as have others, that private contracts cannot effectively waive the Commonwealth's statutorily-enacted public policy regarding workers' compensation benefits.

---

[1] Compare Plaintiff's October 13, 2010 Response to Motion to Dismiss at 7 (asserting that Plaintiff's position is only that Newson is contractually barred from Pennsylvania Workers' Compensation *forum*, and not that he is barred from Pennsylvania benefits) with Plaintiff's Complaint to Enforce Arbitration at ¶ 12 (asserting, prior to Judge Briston's September 2010 Interlocutory Order, that in the case of a workers' compensation claim, the Florida Workers' Compensation Act shall govern any injury related claims). See also Memorandum of Law in Further Support of Motion to Dismiss at n. 5.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Employment and Injury History

Newson, a Georgia resident, initially entered into a contract of employment with the Club, a Florida football team, on or about February 28, 2003 for two football seasons. On February 2, 2005, Newson entered into a second contract with the Dolphins for an additional season, *i.e.*, March 1, 2005 to February 28, 2006. On August 20, 2005, while playing in a professional football game for the Dolphins at Heinz Field in Pittsburgh, Pennsylvania, Newson sustained an injury to his right knee.

### B. Relevant Contract Provisions

Newson, as a football player employed by a member club of the National Football League (hereafter the "NFL") is represented by the NFLPA, the exclusive bargaining representative of employee players in the NFL. The terms and conditions of Newson's employment are therefore governed by the collective bargaining agreement (hereafter the "CBA") entered into between the NFLMC and the NFLPA. Under Article IX of the CBA, disputes regarding interpretation, application, or compliance with any of its provisions - or those of the individual player's contract - are to be resolved through the stipulated arbitration procedure. And Article LIV of the CBA requires that in any state where workers' compensation coverage is not mandatory or where a club is excluded from coverage (such as Florida), the club must either voluntarily obtain coverage under the compensation laws of that state or otherwise guarantee equivalent benefits to its players. The benefits to a player who qualifies under this section "will be equivalent to those benefits paid under the compensation law of the state in which his club is located" and determined under the non-injury grievance ("NIG") procedures of Article IX.

The NFLMC and NFLPA are also parties to a December, 1985 Implementation Agreement further providing - with regard to Dolphins' players' entitlement to workers' compensation rights and benefits equivalent to those set forth for other employees under Florida's Workers' Compensation Law – that (1) claims will be processed through a service agent, and (2) disputes that cannot be resolved between said agent and the player will be heard by a member of a three-arbitrator local panel established by the parties to hear said claims, with appeal available under Article IX of the CBA. Under the Implementation Agreement, (1) players may make a claim for benefits within the statute of limitations set forth in Florida's Workers' Compensation Law; (2) rulings and decisions issued by the arbitrators appointed under the Agreement are applicable only to Florida workers' compensation claims arising under the specified CBA provisions; and (3) the NFLPA, for its players and in consideration for the provision of such benefits, grants the Dolphins the same immunities from suit that other employers in Florida enjoy with respect to suits on account of coverage under Florida Workers' Compensation Law.

As to Newson's individual contract documents, his NFL Player Contract provides that it is made under and governed by Florida law and that any disputes involving interpretation or application of its provisions will be arbitrated in accordance with the CBA. In addition, a 2005 Contract Addendum provides, under Section 6, Choice of Law, that Florida law governs any dispute, claim or cause of action concerning rights or liabilities arising from the relationship between Player and Club and that "the exclusive jurisdiction for resolving injury related claims shall be the Division of Workers' Compensation of Florida, and in the case of a Workers' Compensation claim, the Florida Workers' Compensation Act shall govern." The Addendum contains provisions guaranteeing (through insurance) payment of workers' compensation benefits equivalent to those to which the player would be entitled under Florida Workers'

Compensation law, and a grant of immunity from suit equivalent to that afforded other Florida employers.

C. **The Newson Workers' Compensation Claim and Arbitration Proceeding**

On August 15, 2008, Newson filed the PaWC Claim. Through said claim, Newson sought workers' compensation benefits for the employment-related injuries he sustained in Pennsylvania. On September 16, 2010 (*i.e.*, approximately two weeks after the Club first sought this Court's intervention in a two-year-old State Court proceeding), Judge Briston entered an Interlocutory Order noting that the claim had been "continuously delayed over the past two years" on request of counsel, with multiple unsuccessful mediations. See Judge's Interlocutory Order (noting that seven hearings were scheduled, and four held; at least three mediations were conducted; and numerous continuances were granted).

Furthermore, Judge Briston expressly held that, under Pennsylvania law, the Commonwealth's statutory workers' compensation provisions apply to all work-related injuries incurred in Pennsylvania and that this benefit is protected against/immune from private contract waiver by an employee or his union. See Judge's Interlocutory Order at ¶ 13, 14 (noting that "the Pennsylvania Workers' Compensation Act provides that the Act is applicable to all injuries occurring within Pennsylvania" and that "in Pennsylvania one cannot contract away their rights to workers' compensation, nor can the union or the employer do so"); Section 101, 77 P.S. § 1; McIlvaine Trucking Inc. v. WC Appeal Board, 810 A.2d 1280 (Pa. 2002) (employment contract specifying West Virginia forum/choice of law for workers' compensation claims held unenforceable and employee could file for Pennsylvania workers' compensation benefits under Pennsylvania law). Judge Briston accordingly concluded that the Implementation Agreement did

5

not preclude Newson's Pennsylvania workers' compensation claim and that she had jurisdiction over the work injuries he sustained. See Judge's Interlocutory Order at ¶ 15.[2]

On October 3, 2008, the NFLMC filed a non-injury grievance under the CBA (hereafter the "NFL's Contract Arbitration") asserting that Newson was in breach of his contractual obligations, which required that "the exclusive jurisdiction for resolving injury related claims shall be the Division of Workers' Compensation of Florida, and in the case of a Workers' Compensation claim, the Florida Workers' Compensation Act shall govern." The grievance requested that Arbitrator Das, to whom the matter was assigned, direct Newson to discontinue the PaWC Claim. On October 17, 2008, the NFLPA filed an answer on behalf of itself and Newson, and moved to transfer the grievance from Arbitrator Das to the Florida Arbitration Panel, under the parties' Implementation Agreement. Between January and June 2009, Arbitrator Das denied the NFLPA's motion, retained jurisdiction under the arbitration provisions

---

[2] A similar conclusion was recently affirmed by the Maryland Court of Special Appeals. See Defendant's Notice of Recent Authority, attaching Pro-Football, Inc. v. Tupa, No. 1839, Slip. Op. (Md. Ct. App., Feb. 28, 2011) (affirming the Workers' Compensation Commissioner and Circuit Court's conclusions that football player was covered by Maryland Workers' Compensation Act and Maryland had jurisdiction over his claim; contract's forum selection clause providing exclusive jurisdiction for resolution of workers' compensation claims in Virginia would contravene Maryland's strong public policy interest and was therefore ineffective). See also Pacific Employers Insur. Co. v. Indust. Accident Commission of Cal., 306 U.S. 93 (1939) (holding that California law provided employee injured in that State right to file workers' compensation claim in California, and State need not defer to parties' contractual agreement to be bound by Massachusetts law); United Paperworkers v. Allied Paper, 1987 WL 33822 (N.D. Ind. May 29, 1987) (holding arbitration award restricting workers' compensation claim "illegal" where Indiana law precluded agreement to forego benefits under state law). Cf. Cincinnati Bengals, Inc. v. Abdullah, 2010 WL 1857270, *5 (S.D. Ohio Apr. 28, 2010) (noting that Club's legal challenges to players' rights to claims under California law "will be determined by the California tribunals, not by this Court"); id. (admonishing Club that its "decision to seek an injunction from an Ohio court" on breach of contract basis, during California workers' compensation litigation, raised appearance of "collateral attack on the California tribunal's favorable rulings"); id. (noting that Bengals were sanctioned by California Court for "attempting to circumvent" its order).

of the CBA, and consolidated this contractual-workers'-compensation-provision grievance with the numerous others filed by the NFLMC against retired Dolphins' players who have filed claims seeking workers' compensation benefits in California.[3] He scheduled a hearing on the arbitration for November 16, 2010, which hearing was then repeatedly delayed,[4] but conducted on April 12, 2011.[5]

### D. Related Football Players' Workers' Compensation Proceedings and Arbitrations

The football management and football players' associations have arbitrated their disputes regarding their contractual understandings and undertakings as to players' entitlements to workers' compensation benefits for many years. See, *e.g.*, Affidavit of Adam Kaiser, Counsel to NFLPA (providing as Exhibits arbitration disputes regarding CBA and contract workers' compensation provisions). Despite undertakings to resolve their differences and execute a comprehensive, unambiguous contractual understanding,[6] the football management and football players' associations' disagreements have continued, as has the issuance of arbitrators' decisions

---

[3] As Defendant notes, Plaintiff voluntarily dismissed its Complaint to Compel Arbitration against the players who had brought workers' compensation benefits claims for injuries incurred in California. See Affidavit of NFLPA Counsel, Adam Kaiser, at 42 (noting that "The Dolphins did file a complaint in federal court in California seeking the same relief it seeks here, and then it withdrew the complaint."). See also Defendant's Memorandum of Law in Further Support of Motion to Dismiss at 2.

[4] See, *e.g.*, Plaintiff's Response to Motion for Leave to Supplement the Factual Record, Declaration of NFLMC counsel Brook Gardiner ("The NFLMC exercised its right to postpone the arbitration hearing [then rescheduled for January 27] as a result of unavoidable travel impediments caused by the weather . . . .").

[5] See Notice of Recent Authority filed by Plaintiff on April 25, 2011 (ECF No. 49) at 1.

[6] See, *e.g.*, CBA between NFLMC and NFLPA, Art. LIV, Workers' Compensation, Paragraph 4 (discussing Joint Study for recommendations regarding workers' compensation coverage of NFL players in various states where games are played by June, 1994, with the parties' best efforts to implement agreement thereafter).

7

interpreting – as is their role - related contract provisions.[7] As Plaintiff notes, the most recent decision was issued by Arbitrator Townley on April 21, 2011, in a related arbitration between The Chicago Bears/NFLMC and Michael Haynes, Joe Odom, Cameron Worrell/NFLPA. Arbitrator Townley concluded that Arbitrator Sharpe's August, 2010 decision in Tennessee Titans v. Bruce Matthews, *supra* n. 7, is the "law of the shop", but also that the players violated

---

[7] See, *e.g.* NFLMC/Tennessee Titans and NFLPA/Matthews Arbitration (August 5, 2010) (Arbitrator Sharpe) (hereafter the "Titans-Matthews Decision") (holding contract language providing Tennessee as the "exclusive jurisdiction" for workers' compensation claims concerned choice of law, not forum, and that under California law, California Workers' Compensation Court could reject contractual requirement to apply Tennessee law, but players would have contractual obligation to withdraw the claim); id. (arbitrator has authority to issue "cease and desist order" directing players to discontinue California claims if California declines to apply Tennessee law). See also NFLPA (Matthews) v. NFLMC (Titans), 2011 WL 31068 (S.D. Cal. Jan 5, 2011).

Compare AFL/Tampa Bay Storm v. AFLPA/Brache and Daniels (June 2008) (Arbitrator Wittenberg) (reversing her initial decision interpreting similar contract language, and holding that workers' compensation claims by Tampa Bay Storm players in California violated "clear and unequivocal" language of CBA and must be arbitrated in Florida) with AFL/Tampa Bay Storm v. AFLPA/Brache and Daniels (May 15, 2009) (hereafter "Storm-Brache Decision") (Arbitrator Clarke, on assuming authority over this arbitration, following Arb. Wittenberg's resignation) (deeming Arbitrator Wittenberg's self-reversal erroneous, and concluding that contract language failed to meet "clear and unmistakable" forum waiver requirements under 14 Penn Plaza LLC v. Pyett, 2009 WL 838159 (U.S. 2009)). Arbitrator Clarke further noted that (1) Florida workers' compensation laws afforded no coverage to football players; (2) as no employee had the statutory right to file a workers' compensation claim in Florida, no statutory right existed to be waived; and (3) the "equivalent benefit" rights created by the Implementation Agreement were required to be submitted to arbitration, but those contractual benefit provisions did not speak to workers' compensation benefits under other state statutes. Id. at 41-42. Cf. Brache v. Tampa Bay Storm, Workers' Compensation Appeal Board of California, Case No. ADJ 1908964 (Aug. 30, 2010) (holding that FAA did not apply to CBA; that players' contract required only arbitration of claims for "equivalent benefits" under CBA and not arbitration of other state workers' compensation claims; and that LMRA did not preempt players' rights to seek workers' compensation benefits in California, which were not substantially dependent on or inextricably intertwined with interpretation of CBA). Arbitrator Clarke's Storm-Brache Decision was confirmed by our sister Court for the Central District of California. See AFLPA v. Pigskin, LLC, No 8:10-CV-01062 (C.D.Cal. Oct. 13, 2010).

the *forum* restrictions of their contracts by filing workers' compensation claims in California. See Opinion and Award (hereafter the "Bears-Haynes Decision") at 18.[8]

The Court observes that the arbitrators, including Arbitrator Das (before whom consideration of the parties' contracts is pending) have expressly addressed their limited role as "contractor readers" in providing an interpretation of contractual language regarding workers' compensation benefits. Most recently, Arbitrator Townley observed: "It is clear . . . that any interpretation of state workers' compensation law is to be left to state or other authorities and not to the arbitrator, who is confined to the interpretation of the provisions of the CBA and the Players' Contracts." Bears-Haynes Decision at 23. See also NFLPA/Harvey v. NFLMC/Buffalo Bills Arbitration (February 14, 2007) (Arbitrator Das) (hereafter the "Bills-Harvey Decision") (observing that where the application of state law turns on contract provisions, "there is an issue as to whether a state tribunal is free to interpret a provision in the CBA… on its own without regard to [arbitrators or law of the shop]"); id. (concluding that NFLPA was entitled to a declaration from the arbitrator on the meaning of contract provisions and that interpretation of "state workers' compensation laws is a matter to be decided in the appropriate state or federal forum, not arbitration under the CBA"); id. (commenting on his Cowboys/Texans decision, i*nfra*, noting

---

[8] Arbitrator Townley concluded both (1) that the Titans-Matthews Decision was "preclusive" and (2) that the players did not violate their contract's Illinois choice of law provisions, since Illinois' Workers' Compensation Act provides for the filing of benefits in another state by persons employed in Illinois, but did violate a "choice of forum" provision, requiring "exclusive jurisdiction" of the Illinois Workers' Compensation Commission where the contract granted such jurisdiction with respect to "Workers' Compensation claims and the Workers' Compensation Act". Id. at 24-26. Cf. Storm-Brache Decision at 36-38 (concluding that arbitrators within their respective jurisdictions are not strictly bound by principles of *stare decisis* and *res judicata* but generally respect and follow decisions involving the same issue, parties and facility, except where (1) the prior decision was an instance of bad judgment, (2) there are significant differences in conditions, (3) a full and fair hearing was not provided, or (4) important facts or considerations were omitted); id. at 37 (citing first factor in declining to follow Arb. Wittenberg's self-reversal). Cf. also *supra* at 4 (quoting provisions of Paragraph 6, Choice of Law, of Newson's 2005 Player Contract Addendum).

that arbitrator does "not have the authority to determine what the consequences of the decision would be in a state workers' compensation proceeding"); NFLPA v. Dallas Cowboys and Houston Texans (2005) (Arbitrator Das) (hereafter the "Cowboys/Texans Decision") (explaining that arbitrator is limited to interpreting and applying "the terms of the CBA" and cannot "dictate how the appropriate state authority should treat" actions taken by the parties pursuant to state workers' compensation law); id. (issuing cease and desist order against Clubs, where Clubs were applying state law workers' compensation calculation/offset *to reduce* player's contract benefits); Bears-Haynes Decision at 9, 19 (citing Arbitrator Das). See also generally Storm-Brache Decision at 38 & n. 62 (detailing "decades-long dialog among labor arbitrators regarding their role in resolving statutory claims").[9]

## III. ANALYSIS

---

[9] Cf. Bills-Harvey Decision, *supra* (discussing Clubs' position that state authorities are not bound to apply state workers' compensation statutes in accord with an arbitrator's contract interpretation because "an arbitrator cannot tell states how they should interpret and apply" their own statutes); id. (discussing Clubs' assertion that state law, not CBA, determines benefits to which player is entitled, and dispute has historically been presented to and resolved by respective state authorities); id. (discussing Clubs' position that there is no Federal labor law preemption of state law under Int'l Ass'n of Machinists and Aerospace Workers v. Wis. Employment Relations Comm'n, 427 U.S. 132 (1976), where state law determination of benefit did not deprive player of any collectively bargained benefit); Cowboys/Texans Decision, *supra* (discussing Clubs' position that under Federal labor law parties to CBA do not have power to displace state regulatory law which provides minimum standard equally applicable to all workers and is not preempted) (citing Metropolitan Life Ins. Co. v. Mass. Travelers Ins. Co., 471 U.S. 724 (1985)).

In his Cowboys/Texans Decision, Arb. Das concluded that the CBA did not incorporate Texas workers' compensation laws' more restrictive benefit election requirements and that under federal preemption doctrine, Texas law could not deprive players of rights to collectively bargained benefits exceeding state benefits (*i.e.*, state statutes could not *reduce* employees' bargained benefits). He therefore issued a cease and desist order against the Clubs as to their issuance/requirement of restricted-benefit forms, but noted that he could not dictate how appropriate state authorities would treat forms previously executed by players. His Decision was confirmed by our sister Court for the Northern District of Texas in November, 2005. See Kaiser Affidavit Exs. H-I.

10

## A. Absence of Basis for Injunction or Stay

Plaintiff's Complaint to Enforce Arbitration asserts, under Count I, that it is entitled to relief under Section 301 of the Labor Management Relations Act (hereafter the "LMRA") because Newson's PaWC Claim is a breach of his contract and subject to arbitration, and, under Count II, that it is entitled to relief under the Federal Arbitration Act, 9 U.S.C. Section 4.[10] (hereafter the "FAA"), because it has been aggrieved by Newson's failure to arbitrate. As discussed in the briefings, the parties' positions as to application of the LMRA or FAA have varied in the course of other litigation. See generally Defendant's Memorandum of Law in Support of Motion to Dismiss at 5 & n. 2. The Court need not reach the parties' disputes regarding alternative applicability under the LMRA or the FAA to arbitrations governed by CBAs, because neither statutory authority relied upon by Plaintiff would warrant any relief requested.[11]

Plaintiff has asked this Court to order Judge Briston to dismiss or enter a stay in the PaWC Claim proceedings *because Newson's pursuit of this claim is in breach of contract provisions mandating arbitration of workers' compensation disputes and providing exclusive jurisdiction.*[12]

---

[10] See Complaint to Enforce Arbitration at ¶ 4. But see id. at ¶¶ 45-46 (asserting rights under Section 4 of the FAA for "an Order directing the parties to arbitrate" and under Section 3 for Court to "stay the trial of a proceeding being brought to upon an issue referable to arbitration") (*sic*).

[11] Cf. Storm-Brache Decision at 43 (assuming for purposes of decision that the FAA applies). The Court also notes that the cases cited by Plaintiff in its Motion to Stay are largely inapposite and regard, *e.g.*, a Court's authority to stay the case pending before *it* when it compels the parties to arbitration rather than proceeding (*i.e.,* a stay of the Court's own hand). See Defendant's Memorandum of Law in Support of Motion to Dismiss at 19 n. 10.

[12] See, *e.g.*, Transcript of Oral Argument at 10 ("When Mr. Newson filed a workers' compensation claim in Pennsylvania and sought benefits under Pennsylvania's workers' compensation, he knowingly and expressly violated that contract.").

A principal difficulty with this argument is that it runs afoul of the role of this Court in relation to the role of Arbitrator Das in the pending consolidated arbitration. Arbitrator Das has observed that whether the contracts "mandate that Players may only file workers' compensation claims with the Florida arbitration panel and not elsewhere" is within the scope of Article IX of the CBA and therefore properly before him. The threshold question of whether Newson breached any contractual obligation by filing a Pennsylvania workers' compensation claim and proceeding before the Pennsylvania Worker's Compensation Court is indeed a question of contract interpretation covered by the broad arbitration provision of the CBA and currently pending before the arbitrator.[13] There is no indication whatsoever in the pleadings that Defendant Newson is not participating the relevant arbitration.[14]

Plaintiff cannot in the guise of a request to "enforce" arbitration ask this Court to preempt the arbitrator's authority as to the meaning/scope of the contract language by accepting Plaintiff's interpretation of the very language currently under arbitration.[15] Thus, even assuming

---

[13] Cf. Cincinnati Bengals, 2010 WL 1857270 at *6 (explaining that Bengals' claims for relief were based on breach of contract and encompassed by arbitration clause); id. at **8-11 (granting players' Motion to Compel Club to arbitrate question of players' alleged breach of contract in filing California workers' compensation claims, where Club asserted breach to Ohio Court, *rather than in arbitration as required by NFL contract*).

[14] See Transcript of Oral Argument at 10 (acknowledgement by Plaintiff that Defendant "has done nothing to delay that arbitration hearing"). Compare Plaintiff's Response to Motion to Dismiss (asking this Court to "enforce" the Order of Arbitrator Das requiring arbitration under the CBA).

[15] Compare Defendant's Memorandum of Law in Support of Motion to Dismiss at 22 (disputing Plaintiff's position that the contracts' creation of Florida State law equivalent workers' compensation benefits and related provisions waived a player's rights to statutory benefits and/or claim proceedings in other states) with Plaintiff's Response to Motion to Dismiss (asserting that forum for workers' compensation matters was decided in CBA).

that Plaintiff's claim under the LMRA is not time barred,[16] or that the FAA applies,[17] Plaintiff's assertions of entitlement to "enforcement" of arbitration, or an injunction or "stay" from this Court against Newson or the Pennsylvania Court on the basis of contract violation are unfounded. And indeed, should Arbitrator Das conclude that the players' rights regarding workers' compensation benefits/claims in states other than Florida were not within the scope of their contractual agreements, see, *e.g.*, Storm-Brache Decision, there will be no question of any tension between those agreements and Pennsylvania workers' compensation law.[18] See Cincinnati Bengals, 2010 WL 1857270 (concluding that players' workers' compensation benefit disputes were grounded in questions of breach of contract and threshold question of intent/scope of private contract provisions was for arbitration).

Plaintiff has also suggested that this Court should "stop [Defendant] from proceeding with his Pennsylvania claim "*until the arbitration proceeding . . . can determine whether he*

---

[16] Compare Defendant's Memorandum of Law in Support of Motion to Dismiss at 21 (citing Isaac v. WM H. Pflaumer & Sons, Inc., 1990 WL 102808 at *3 (E.D. Pa. 1990) ("The statute of limitations under [LMRA] § 301 is six months.")) with Plaintiff's Response to Motion to Dismiss (asserting timeliness under LMRA where Club is "seeking to enforce, not compel, arbitration"). The Court again observes that arbitration is proceeding with the parties' cooperation.

[17] See Defendant's Memorandum of Law in Support of Motion to Dismiss at 5, 21 (asserting that arbitrations under a CBA are governed by Section 301 of the LMRA and not the FAA, citing United Paperworks Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 41 n. 9 (1987)); Brache v. Tampa Bay Storm, Workers' Compensation Appeal Board of California, Case No. ADJ 1908964 at 12-18 (Aug. 30, 2010) (concluding (1) FAA does not apply to CBAs, and (2) although FAA may require arbitration of state law statutory claims in individual employment contract cases, analogous players' contract did not establish agreement to arbitrate *California* workers' compensation claim).

[18] Cf. Metropolitan Life Ins. Co. v. Commonwealth of Mass., 471 U.S. 724, 725 (1985).

13

*violated the contract* by seeking benefits under Pennsylvania law."[19] A principal difficulty with this argument is that it runs afoul of the role of this Court in relation to the role of the Pennsylvania Courts.[20] Cf. Pacific Employers Ins. Co. v. Indust. Accident Commission of Cal., 306 U.S. 493, 503 (1939) (holding that State had "constitutional authority . . . to legislate for the bodily safety and economic protection of employees injured within it" and that "[f]ew matters could be deemed more appropriately the concern of the State in which the injury occurs or more completely within its power").[21]

As Arbitrator Clarke has nicely summarized, the Supreme Court has made clear that a union may, through "clear and unmistakable" waiver – and only "clear and unmistakable waiver" – forego its employees' rights to bring a Federal statutory claim in a judicial forum. See Storm-Brache Decision at 42 (discussing Wright v. Universal Maritime Serv. Corp., 525 U.S. 70

---

[19] See Transcript of Oral Argument at 10 (emphasis added); id. at 20 (Plaintiff's assertion that "what Mr. Newson is doing is refusing to understand that the arbitration is the appropriate forum for resolution of the grievance that's been filed"); Complaint to Enforce Arbitration at 1 (asserting that "this Court should order Mr. Newson to cease pursuit of claims within the workers' compensation system of . . . Pennsylvania").

[20] Cf. Transcript of Oral Argument at 17 (Plaintiff's observation that issues before Arbitrator Das include "whether the parties legally could have negotiated away . . . state-created employee benefits rights and whether they have done so and whether the relief sought by the Miami Dolphins would entail an impermissible intrusion by the arbitrator in the matter solely within the province of state laws"); compare supra at 8-9 (Arb. Das' discussion, in previous decisions, of role of arbitrator in relation to state courts).

[21] Cf. Brache v. Tampa Bay Storm, Workers' Compensation Appeal Board of California, *supra* (explaining that Section 301 of the LMRA preempts state law claims based directly on rights created by, or "substantially dependent on or inextricably intertwined with the interpretation of" a CBA, but that "the establishment of labor standards falls within the traditional" power of the State and "it would be inconsistent with congressional intent under [Section 301] to preempt state rules that establish rights and obligations independent of a labor contract") (quoting Lingle v. Norge Divis. of Magic Chef, Inc., 486 U.S. 399, 412 (1988) and Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 213 (1985)). Cf. also Defendant's Memorandum in Support of Motion to Dismiss at 12, n. 6 ("Section 301 cannot be read broadly to preempt nonnegotiable rights conferred on individual employees as a matter of state law.") (quoting Livadas v. Bradshaw, 512 U.S. 107, 122 (1994)).

(1998); see also 14 Penn Plaza LLC v. Pyett, 2009 WL 838159 (US Apr. 1, 2009). And although the right to file a workers' compensation claim is State, rather than Federal, in nature, it seems "unlikely that Congress . . . intended minimum state statutory allowance programs to be treated differently than Federal statutory rights." Id. at 42 n. 65 (also citing Eastern Assoc. Coal Corp. v. Massey, 373 F.3d 530 (4th Cir. 2004) (applying Wright to allegation that union had waived state statutory claims). As any preemption of State court jurisdiction in favor of an agreement to arbitrate statutory claims requires a "clear and unmistakable waiver" of the employee's right, that right is not preempted while this contract-interpretation arbitration proceeds. See Storm-Brache Decision at 42-43 (observing that none of the agreements in question "clearly and unmistakably waives any right covered employees might have to file workers' compensation claims in states other than Florida" and "[a]bsent such clarity, any attempted waiver must fail"); Cincinnati Bengals, 2010 WL 1857270 at 10-11 (concluding that players could seek workers compensation benefits in State Court while arbitration as to meaning of contract provisions was pending).

B. **Anti-Injunction Act Prohibits Intrusions Requested in Plaintiff's Motions**

Plaintiff's Motions for Preliminary Injunction and/or "Stay" raise serious prudential concerns and, indeed, are precluded by the Anti-Injunction Act, 28 U.S.C. § 2283 (hereafter the "AIA"). The AIA prohibits any federal court from issuing an injunction against proceedings in any state court, except within three (3) specifically defined exceptions: where "expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." Id.

The Club contends that its motions fall within the "necessary in aid of jurisdiction" exception. See, *e.g.*, Plaintiff's Response to Motion to Dismiss at 8 (explaining that exception "provides authority for a federal district court to stay a parallel state proceeding pending

15

arbitration"). However, reliance on this exception becomes entirely circular, and this basis for enjoining the State Court does *not* apply, where the Federal Court's jurisdiction is premised solely on Plaintiff's request for an injunction/stay (*i.e.*, intrusion on the State proceeding) and the Federal Court has no other "proceeding" before it. Plaintiff cites no authority to the contrary. Cf. In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liability Litig., 134 F.3d 133, 144-45 (3d Cir. 1998) (explaining that exception is "narrow" and "[a]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state court to proceed in an orderly fashion to finally determine the controversy"). See also Transcript of Oral Argument at 35-36, 42-43.[22]

---

[22] Nor would the Court have authority in these circumstances to direct *Newson* to discontinue his State Court claim. Cf, *e.g.*, In re Prudential Ins. Co. of Amer. Sales Practices Litig., 314 F.3d 99 (3d Cir. 2002) (concluding that injunction "directed at plaintiffs, and not at the state court [had] the effect of staying the state court proceeding and [was] therefore subject to the [Act's] restriction" absent exception); In re Life Investors Ins. Co. of Amer., 589 F.3d 319 (6th Cir. 2009) (holding that District Court's issuance of preliminary injunction enjoining insurer from continuing with settlement process in State court was not within exceptions to Anti-Injunction Act). Compare Transcript of Oral Argument at 10 (request by Plaintiff that the Court "exercise its authority" under the LMRA and FAA to "stop [Newson] from proceeding with his [PaWC] until the arbitration proceeding . . . can determine whether he violated the contract by seeking benefits under Pennsylvania law").

Because the Anti-Injunction Act bars this Court from granting the relief requested, the Court need not reach the Defendants' additional arguments raised under either (a) the Norris-LaGuardia Act, 29 U.S.C. §§ 101 et seq., or (b) the Colorado River doctrine. See Defendant's Memorandum in Support of Motion to Dismiss at 18-21; Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817-18 (1976). It notes, however, that much of Defendants' analysis - particularly that regarding (a) evidentiary burdens and requirements under the Norris-LaGuardia Act and (b) abstention from questions of state law bearing on policy problems of substantial import entrusted to state's specialized courts - is well-taken. See, *e.g.*, Transcript of February 9, 2011 Oral Argument at 4, 32-33.

C. **Availability of Relief at Law**

Even if it were appropriate to consider Plaintiff's injunction request on the merits, it is apparent that the issuance of an injunction is manifestly unwarranted in these circumstances.[23] The underlying workers' compensation dispute regards the payment of money damages. Plaintiff has a full and sufficient remedy at law, and has failed to make any showing of irreparable harm. See Defendant's Memorandum of Law in Support of its Motion to Dismiss at 31-32 ("An injury measured in solely monetary terms cannot constitute irreparable harm.") (quoting Liberty Lincoln-Mercury, Inc. v. Ford Motor Co., 562 F.3d 553, 557 (3d Cir. 2009)); In re Arthur Treacher's Franchisee Litig., 689 F.2d 1137, 1145 (3d Cir. 1982) ("We have never upheld an injunction where the claimed injury constituted a loss of money, a loss capable of recoupment in a proper action at law."). And Plaintiff's articulation of its position, at oral argument, that it would be assertedly less difficult for Defendant to obtain any additional compensation to which he might be entitled than for the Club to recover overpayment speaks to the balance of hardship; it does not, however, speak to an irreparable injury – which the Court finds does not exist in this situation. [24]

The Court also notes that any assertion by Plaintiff of potential of harm by the State Court proceeding in the way of improper influence on the pending arbitration is in tension with whole premise of the FAA – that the Federal Court reposes confidence in the arbitrator to reach

---

[23] See generally, *e.g.*, Miller v. Mitchell, 598 F.3d 139 (3d Cir. 2010) (identifying factors considered on ruling on request for injunctive relief).
[24] See Transcript of Oral Argument at 23-24. Cf. Storm-Brache Decision, *supra* (noting Club's request that arbitrator direct player dismissal of California claim, of forbearance of collection of award of California benefit in excess of "equivalent benefits" under CBA and Florida law, and/or directing AFLPA to prohibit filing of California claims or pay money damages for any award in excess of "equivalent benefits").

17

an appropriate decision based on the factors he looks to.[25] Plaintiff may present its arguments regarding contractual obligations[26] and the effectiveness of any such private contractual obligations as against State public policy law to the arbitrator and to the State Court (as it has done, and on which the State Workers' Compensation Court issued an Interlocutory Order last September, and the arbitrator heard argument last month).

Finally, the Court observes that there is no basis to suppose that any public interest would be served by granting an injunction against a State Court proceeding designed to enforce its public policies regarding working conditions and work-related injury protections. See *supra* at 12 (citing Pacific Employers Ins. Co., 306 U.S. at 503 (observing that "[f]ew matters could be deemed more appropriately the concern of the State in which the injury occurs or more completely within its power")).

D. **Motion to Dismiss**

As stated above, Newson has participated in the relevant contract-interpretation arbitration (regarding the threshold question of whether Newson breached any contractual obligation by filing the PaWC claim) since said arbitration was filed by the NFLMC on October

---

[25] Plaintiff's assertions of a policy interest in enjoining/staying State Court proceedings in order for NFL arbitrators to develop a "uniform law of the shop", thus averting a "hodge podge of conflicting" court decisions is similarly unpersuasive. See Plaintiff's Memorandum in Support of Motion for Preliminary Injunction. Compare generally, Kaiser Affidavit Exhibits (providing decisions of arbitrators (a) repeatedly indicating role as interpreters of the parties' contractual obligations versus authority over individual State Workers' Compensation Court determinations of statutory employee benefits, and (b) reaching differing interpretations of analogous contract language as to parties' understandings regarding workers' compensation benefits and forums); Transcript of Oral Argument at 16 (Plaintiff counsel's observation that Arbitrators Sharp and Clarke have decided the issue of contractual waiver of the players' workers' compensation benefits differently).

[26] Cf. Penn Plaza, *supra*; cf. also Storm-Brache Decision, *supra*; Brache v. Tampa Bay Storm, Workers' Compensation Appeal Board of California, Case No. ADJ 1908964, *supra*; Cincinnati Bengals, *supra*.

3, 2008, and that arbitration is ongoing. Plaintiff's attempts to shoehorn this action into the LMRA or FAA notwithstanding, there is no basis for this Court to compel arbitration where an arbitration is proceeding, nor is there any basis for this Court to enforce arbitration where the Arbitrator has yet to issue his decision. There is simply no basis for this Court's intervention in either that arbitration (by way, *e.g.*, of interpreting the contract properly before Arbitrator Das) or the State claim proceeding before Judge Briston these past two years regarding a core matter within her competence. Plaintiff's Motions for Injunction or Stay (ECF Nos. 2 and 9) will, therefore, be denied, and Defendant's Motion to Dismiss the Complaint (ECF No. 18) will, therefore, be granted. An Order will follow.

Dated: May 3, 2011                                        BY THE COURT

                                                          _____
                                                          LISA PUPO LENIHAN
                                                          Chief U.S. Magistrate Judge